**The Court directs Appellee Purdue Pharma L.P. to respond to Appellant's motion by March 6, 2026. Appellee need not submit a fully briefed response. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 40 and to mail this Endorsement to the *pro se* Appellant at the address listed on ECF.**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  2/20/2026

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

**Dated: February 20, 2026.**
**White Plains, NY**

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

Purdue Pharma L.P.,st al.

PURDUE PHARMA L.P., P.F. LABORATORIES, INC.,

PURDUE PHARMACEUTICALS L.P.,


PURDUE PHARMA TECHNOLOGIES, INC.,

and RHODES TECHNOLOGIES,

  Appellee


AMANDA MORALES

Appellant

Chapter 11

Case No. 7:25-cv-10158

MEMO ENDORSED

### Appellant's Motion for Stay Pending Appeal

In the absence of a stay, the plaintiff will face the dilemma of either taking action on the underlying administrative complaint — which would in all likelihood moot its appeal — or permanently losing exclusive civil enforcement jurisdiction over the case by triggering a private right of action under 52 U.S.C. § 30109(a)(8)(C). Conversely, defendants  will face only minimal harm if a stay of the PLANTIFF is conformance period is granted, as the additional time necessary for appellate review will only marginally add to the total duration of this case, which involves due process violations and wrongful death claims that have merit.

**Non-Core Claim Failure to warn serotonin syndrome is not a bankruptcy issue and should be transferred to district court.**

My father died in 2010 and Purdue Pharma failed to warn about OxyContin interactions with antidepressants citalopram and amitriptyline that can cause serotonin syndrome and can be fatal. Purdue changed the warning label in 2016. I found out about the label change in 2021 and have been denied due process for my non-core claim. This timeline supports **foreseeability and knowledge**, not a bankruptcy created issue. Nothing about the claim depends on the bankruptcy estate.

The bankrupcy courts Modified Bench Ruling states

"Objections Related to Classification of Claims

Other objections relate to classification of claims under the Plan. Certain pro se objectors oppose the Plan's classification scheme, arguing that their claims are fundamentally different from others based on the nature of the injury or the damages sought. See, e.g., Morales Obj.

[ECF. No. 7355 at 8-11];But these distinctions do not meaningfully alter the priority or legal bases of these claims. Moreover, any attempt to divide the creditor body in the granular way suggested by objectors would result in an unworkably complex classification scheme.

"distinctions do not meaningfully alter the priority or legal bases of these claims" — is not just wrong, it's legally incoherent in the context of *non-core*, state-law wrongful-death claims like mine.

### ARGUMENT

**Priority and legal basis *are* defined by distinctions the court ignored**

My claim is:

- a state-law wrongful-death tort**,**
- arising from failure to warn**,**
- involving post-petition conduct (2016 label change confirming the risk)**,**
- and **non-core** under 28 U.S.C. § 157(b).

Those distinctions *directly determine*:

- the legal basis (state tort law, not bankruptcy law),

- the priority (personal injury tort claims have unique treatment under § 1123(a)(4) and § 1129(a)(7)),
- and the forum (Article III court with a jury right).

To say these distinctions "do not meaningfully alter" anything is to pretend the Bankruptcy Code doesn't exist

### Non-core tort claims cannot be lumped together without violating Article III

The Supreme Court has been explicit: Bankruptcy courts **cannot** finally adjudicate non-core tort claims without consent (*Stern v. Marshall*, *Granfinanciera*, *Wellness*).

Your claim:

- is non-core,
- carries a jury-trial right,
- and cannot be re-characterized as a "bankruptcy claim" simply because Purdue filed Chapter 11.

When the court says distinctions don't matter, it is effectively saying:

"We can treat non-core tort claims as if they were core bankruptcy claims."

That is unconstitutional

### Wrongful-death claims have unique damages structures that *absolutely* alter priority

Wrongful-death damages include:

- loss of life,
- loss of consortium,
- loss of support,
- medical expenses,
- funeral expenses,
- punitive damages (in many states).

These are **not** the same as:

- OUD claims,
- NAS claims,
- medical monitoring claims,
- third-party payor claims.

Different damages → different valuation → different classification → different priority.

To say distinctions don't matter is to erase the entire structure of tort law.

**The court's statement contradicts § 1123(a)(4)**

Section 1123(a)(4) requires:

"the same treatment for each claim or interest of a particular class."

You cannot:

- combine different tort theories,
- with different damages,
- with different legal elements,
- with different constitutional rights,
- and different evidentiary burdens

into one class **unless** the distinctions are meaningless.

But they are not meaningless. They are the entire structure of the claim.

The court's statement is a shortcut to justify unlawful claim consolidation.

If distinctions "do not meaningfully alter" the legal basis, the court is effectively saying:

"Your jury right is irrelevant because we want administrative efficiency."

That is a textbook Seventh Amendment violation

### The Supreme Court's *Harrington* decision makes the court's statement untenable *Harrington v. Purdue Pharma* (2024) held:

- non-consensual releases cannot extinguish state-law claims,
- bankruptcy courts cannot rewrite tort law for efficiency,
- claimants retain their Article III rights unless they consent.

My claim is:

- non-core,
- state-law,
- non-consensual,

- and constitutionally protected.

Distinctions matter *more* after *Harrington*, not less.

The phrase "distinctions do not meaningfully alter" is not a legal conclusion. It is a policy preference dressed up as law.

It allows the court to:

- collapse diverse tort claims into one class,
- avoid individualized adjudication,
- avoid Article III review,
- and force claimants into a trust system they did not consent to.

This is the opposite of due process.

Post-petition conduct is treated differently under bankruptcy law; it can create administrative claims or claims outside the estate. The court's statement ignores this entirely. That is not a harmless oversight — it changes the legal basis and potential priority of the claim.

The distinctions the bankruptcy court dismissed are not superficial. They define the claim's legal basis, its priority, its constitutional protections, and its proper forum. By declaring them meaningless, the court deprived wrongful-death claimants of due process and exceeded the limits of its statutory and constitutional authority My claims are unsecured, but they are not interchangeable. *What about the argument that the plan needed administrative efficiency? Isn't that a valid consideration?*

Efficiency cannot override Article III or the Seventh Amendment. The Supreme Court in *Harrington* reaffirmed that bankruptcy courts cannot rewrite state-law claims or extinguish constitutional rights for the sake of efficiency. The Constitution is not suspended in mass-tort bankruptcies.

## Section 1141 (d) (3)

(3)The confirmation of a plan does not discharge a debtor if—(A)the plan provides for the liquidation of all or substantially all of the property of the estate;(B)the debtor does not engage in business after consummation of the plan; and(C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

## Argument

I.    Debtors claim that Purdue Pharma is "Far from liquidating and ceasing operations" contradicts disclosure statement "liquidating debtor" defined

In legal or bankruptcy contexts, a debtor is the person or entity filing for bankruptcy or against whom it's filed.

Debtors omnibus memorandum of law in opposition to motions to stay confirmation order [Docket NO. 8458] states

"limitations in section 727(a), applies "[i]f the chapter 11 plan provides for the liquidation of all, or substantially all, the property of the estate and the debtor does not continue in business after confirmation of the plan") (emphasis added).  The first two requirements are not satisfied here.  Instead, the Plan plainly provides that on or prior to the effective date, Purdue's current operating assets will be transferred to a new company that will be known as Knoa Pharma.  (See Plan § 5.4(a); DelConte Decl. (Dkt. No. 8148) ¶¶ 4, 7; Modified Bench Ruling at 27-28 ("Knoa will receive substantially all of the Debtors' non-cash assets and $135 million of unrestricted cash and cash equivalents").)  Knoa will operate the Debtors' businesses for the public benefit and with the express purpose of addressing the opioid crisis.  (Plan § 5.4(g); DelConte Decl. (Dkt. No. 8148) ¶ 10; Modified Bench Ruling at 27.)  Far from liquidating and ceasing operations, the Debtors are reorganizing as a public benefit company, and accordingly, the exception to discharge in 11 U.S.C. § 1141(d)(3) is inapplicable."


If this was true then why does the disclosure statement [docket No.

7638]use the words liquidate, liquidation and liquidating 198 times in the document. The term "Liquidating Debtors" is used

Disclosure statement page 33 states "Liquidating Debtors" means, collectively, all Debtors that are not Transferred Debtors,on and after the Effective Date."

The term liquidating debtor is used numerous times throughout the document and was defined by them in the document they wrote.

5.8 Creditor Trusts

(iii)      administer, process, resolve and **liquidate** Channeled Claims, including Non-Participating Channeled Claims, applicable to such Creditor Trust, in each case as provided in the applicable Creditor Trust Documents page 109 disclosure statement docket No. 7638

For Purdue to really argue that this plan is "far from liquidating and ceasing operations" is not factual and they know this but really expect to gaslight when the evidence proves otherwise, evidence that they wrote and filed as part of the

confirmation plan, that's egregious. Their argument lacks truthfulness, facts and law to support it.

## Purdue Pharma and Knoa are completely different companies

The debtor is Purdue Pharma not the Sacklers and not the new company Knoa. Purdue is ceasing operations and the new company Knoa will be owned by an independent foundation and operate as a public-benefit company with no obligation to maximize profits. Purdue Pharma was a private for profit entity and the two are not the same. Private for profit entity is no where near the same as a public-benefit company.

## The debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

Debtors actions continue to be egregious as they are not honest and they would be denied discharge under section 727(a), a bankruptcy court must deny a debtor a discharge from their debts, outlining grounds like fraud, concealing assets, failing to keep records, or disobeying court orders, preventing a "fresh start" in those specific cases. 11 U.S. Code § 727 outlines conditions for denying discharge in Chapter 7 (liquidation) bankruptcy. A discharge is generally granted, unless the debtor:

o   Isn't an individual.

o   Fraudulently transferred or hid property.

o   Concealed, destroyed, or falsified financial records. o   Made a false oath or presented a false claim.

o   Failed to explain a loss of assets satisfactorily. o   Refused to obey a lawful court order.

Purdue Pharma is guilty of 4 out of those 6 conditions so they wouldn't be granted a discharge under section 727(a) of this title.


## STANDARD OF REVIEW


Section 158(a) of title 28 of the United States Code grants the United States District Courts jurisdiction to hear appeals from interlocutory orders issued by a bankruptcy court at their discretion. 28 U.S.C. § 158(a)(3) (noting that a District Court shall have jurisdiction to hear appeals "from interlocutory orders and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy

judges under 28 U.S.C. § 157"). Courts in the Fifth Circuit look to the factors set forth in 28 U.S.C. § 1292, which defines the scope of appellate jurisdiction over interlocutory appeals from the district courts. In re Royce Homes LP, 466 B.R. 81, 93 (S.D. Tex. 2012).

When deciding whether to grant leave to appeal under Bankruptcy Rule 8004, courts consider factors which include whether: "(1) the question involved is one of law; (2) the question is controlling; (3) there is substantial ground for difference of opinion respecting the correctness of the bankruptcy court's decision; and (4) an immediate appeal would materially advance the ultimate termination of the litigation." Id. (internal citations and quotations omitted).  Because each of these factors weighs in favor of leave to appeal, this Court should grant the creditors Motion for Leave to Appeal the Standing and class certification motions.


**The Question Involved is One of Law**

The first factor courts consider in deciding whether to grant leave to appeal is

whether "the question involved is one of law." In re Royce Homes LP, 466 B.R. at 94 (citing In re Gray, 447 B.R. 527, 533 (E.D. Mich. 2011). In the context of an interlocutory appeal, "the question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." Id. (citing In re Fairfield Sentry Ltd. Litig., 458 B.R. 665, 673 (S.D.N.Y. 2011)).

Each of the different categories of claims against a debtor in bankruptcy. A plan of reorganization must categorize all claims (other than certain priority claims) into classes for the purposes of voting, receiving distributions under the plan and otherwise generally providing a framework under which the provisions of the plan dealing with classified claims will operate. Claims may be placed in the same class only if they are "substantially similar" to one another. This depends on the nature of the claim (for example, general unsecured claims, priority wage claims, and so on), and not on the on the creditor's characteristics (for example, institutional investors, trade creditors, and so on). All claims within a particular class must be treated the same, unless the holder agrees to less favorable treatment.

Parties are entitled to a jury trial for personal injury or wrongful death claims, which 28 U.S.C. § 157(b)(5) requires be tried in the district court. 28 U.S.C. § 1411. Section 1411 also permits issues arising under § 303 (involuntary filing) to be tried without a jury.

 While restructuring of debtor-creditor relations in bankruptcy "may" be a "public right," action that seeks to augment the estate and does not involve creditors' claims to a pro rata distribution of the estate, involves a "private" right. Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989). But see RTC v. Pasquariello (In re Pasquariello), 16 F.3d 525 (3d Cir. 1994)

A party seeking a stay pending appeal bears the burden of showing such a stay is warranted upon consideration of four factors:  "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  Nken v. Holder, 556 U.S. 418, 434 (2009). "When the government is a party, its 'harm and the public interest are one and the same, because the government's interest is the public interest.'"  Ala. Ass'n of Realtors v. U.S. Dep't of Health & Human Servs., 539 F. Supp. 3d 211, 213 (D.D.C. 2021) (quoting Pursuing America's Greatness v. FEC, 831 F.3d 500, 511 (D.C. Cir. 2016)).

Although the precise balance between these four factors remains an open question, "courts in this Circuit have continued to analyze the four factors 'on a sliding scale whereby a strong showing on one factor could make up for a weaker showing on another.'"  Id. at 213 (quoting NAACP v. Trump, 321 F. Supp. 3d 143, 146 (D.D.C. 2018)).  Under that framework, a movant may "remedy a lesser showing of likelihood of success on the merits with a strong showing as to the other three factors, provided that the issue on appeal presents a 'serious legal question' on the merits." Cigar Ass'n of Am. v. U.S. Food & Drug Admin., 317 F. Supp. 3d 555, 560 (D.D.C. 2018) (quoting Wash. Metro Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977)).

## PLANTIFF FACES IRREPARABLE HARM IN THE ABSENCE OF A STAY PENDING APPEAL

Irreparable harm is established by a "de facto deprivation of the basic right to appeal," which would be the case here.  Republican Nat'l Comm. v. Pelosi, No. 22659, 2022 WL 1604670, at *4 (D.D.C. May 20, 2022); Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative, 240 F. Supp. 2d 21, 23 (D.D.C. 2003). If the

Court's order is not stayed, I would essentially be put to an untenable choice: conform and give up the right to appeal or give up its jurisdiction over this case.

Courts recognize that loss of appellate rights and equitable mootness constitute irreparable harm. If the plan is consummated while your appeal is pending:

- My wrongful death claim may be irreversibly channeled into a trust.
- I may permanently lose my Article III adjudication and jury trial rights.
- Your due process challenge may become moot, even if you are correct on the law.

Courts routinely deny stays when harm is speculative, but in my case the harm is concrete and imminent: once distributions begin, your claim cannot be unwound.

## No Substantial Harm to Other Parties

A stay preserves the status quo. A short administrative stay:

- Does not meaningfully delay distributions to millions of creditors.
- Does not prejudice the estate.
- Does not undermine the plan because the appeal is already pending.

By contrast, denying a stay extinguishes your constitutional rights. The balance of harms favors you.

### PLANTIFF IS LIKELY TO SUCCEED ON THE MERITS, OR AT LEAST PRESENTS A SERIOUS LEGAL QUESTION

I will not belabor the merits of this case more than is necessary to establish an entitlement to a stay. Procedural due process" concerns the procedures that the government must follow before it deprives an individual of life, liberty, or property. The key questions are: What procedures satisfy due process? And what constitutes "life, liberty, or property"? Thee Court has determined that due process requires, at a minimum: (1) notice; (2) an opportunity to be heard; and (3) an impartial tribunal. Mullane v. Central Hanover Bank (1950). I have tried to have the merits decided in bankrucpy court by both Judge Robert Drain and Judge Sean Lane but both have decided not to decide my claims on the merits and that has violated my due process rights. Failure to warn about OxyContin interactions with antidepressants is not he same or related to the opioid crisis and isn't related the the other claims in this case. Purdue knew or should have known about this danger because the warning was changed in 2016 and are liable for the death of my father. The FDA safety announcement stated that this interaction that causes serotin syndrome has been known in the medical community since the 1960s, it's not very

well known but the information has been published and is accessible had Purdue ensured safety over profit.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Recovery "if the claimant's harm was proximately caused by the negligence of the manufacturer in that the product was . . . not reasonably safe because adequate warnings or instructions were not provided." RCW 7.72.030(1). To prevail on a failure to warn claim, a plaintiff must show that (1) the defendant failed to sufficiently warn, (2) the plaintiff suffered damages, and (3) the defendant's failure to sufficiently warn of the dangers was a proximate cause of the plaintiff's damages. See, e.g., Little v PPG Industries, Inc., 19 Wn.App. 812, 818 n.3 (1978) (approving the Restatement of Torts' recitation of the elements). However, in the context of medical failure to warn claims, the duty of the manufacturer to warn is satisfied if the manufacturer gives adequate warning to the physician who prescribes or implants the product. Terhune v. A.H. Robins Co., 90 Wn.2d 9, 13 (1978).They must also show that her physician would have acted differently had he been given an adequate warning. See Contreras v. Bos. Sci. Corp., No. 2:12-cv-03745, 2016 WL 1436682, at *4 (S.D. W.Va. Apr. 11, 2016).

Purdue has admitted to some of their deceptive practices and actions that were motivated by greed but they still haven't been accountable for all their wrongdoing. Purdue has plead guilty to fraud and conspiracies to defraud the United States and violate the anti-kickback statues. Purdue misbranded OxyContin, false marketing practices and other deceptive actions have been crimes done by Purdue Pharma. Purdue failed to warn about the dangers of OxyContin and antidepressants at the height of the record sales of OxyContin. Their actions harmed and killed people who had no way of knowing this danger but had the information been available to the public and on the label then sales wouldn't have been as successful as it was because 1 in 10 Americans takes an antidepressant so that's 10 percent less of the population that wouldn't have been prescribed OxyContin and would have effected sales and profit. They caused harm to people other than those effected by the opioid

crisis and those actions deserve accountability. Public interest is in protecting the rights of civilians and ensuring safety for consumers. Purdue's long history of deception is egregious and avoiding accountability is something that needs to be stopped with full transparency. This case isn't about what's in Purdue Pharma's best interest they have already got away with too much and they have avoided criminal charges and they can't escape accountability in it's entirety. This case is about the victims and their loss not about what Purdue wants to gain out of this case at their convenience. A confirmation plan approving claims related to the opioid crisis that have been litigated already will not be affected by the claims that have no interests in the abatement program or addiction treatment.

## Public Interest Favors a Stay

The public interest is served by:

- Ensuring **constitutional due process** for wrongful-death claimants.
- Preventing bankruptcy courts from exceeding their authority.
- Preserving the integrity of the appellate process.
- Ensuring that non-core tort claims are adjudicated in the proper forum.

Courts emphasize that the purpose of a stay is to **preserve the status quo pending appeal**. That principle applies with maximum force where, as here, the appeal raises **fundamental constitutional questions**.

My wrongful-death claim entitles me to:

- a jury
- in an Article III court
- applying state law

Bankruptcy courts cannot provide that.

This is a constitutional right, not a discretionary one. **Claimant does not consent to bankruptcy adjudication under 28 U.S.C. § 157(c)(2).**

A business affected with a public interest is subject to regulation by the police power of the state to protect and to promote the general welfare of the community which it serves. Such a designation does not arise from the fact that the business is large, or that the public receives a benefit or enjoyment from its operation. The enterprise, as a result of its integral participation in the life of the community or by the privilege it has been granted by the state to serve the needs of the public, is regulated more strictly by the state than other businesses

Counsel for the defendants oppose this motion.

## CONCLUSION

For the foregoing reasons, this Court should grant the plaintiffs motion to stay pending appeal.

Respectfully submitted

Amanda Morales
205 Calle Del Banco
Bernalillo, NM 87004
(505) 318-2400  (505) 218-5643
ajlare356@gmail.com



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this

February 16, 2026  a copy of the document(s) entitled **Motion for stay pending appeal**

To Defendants was/were emailed to. James

Mcclammy james.mcclammy@davispolk.com

Marshall Huebner marshall.huebner@davispolk.com Townes, Esther C. <esther.townes@davispolk.com>